DINGEMAN ADVERTISING, INC v ALGOMA TOWNSHIP

OPINION OF THE COURT

1. ZONING—ORDINANCES—AMENDMENT—BUILDING PERMIT—NONCON-
FORMING USE—VESTED RIGHTS.

The test whether the holder of a building permit has acquired
vested rights in land prior to the enactment of an amended
zoning ordinance, thereby entitling him to a nonconforming
use, is not whether he has spent much or little in reliance upon
the permit, but rather whether there has been any tangible
change in the land itself by excavation and construction.

2. ZONING—ORDINANCES—AMENDMENT—BUILDING PERMIT—NONCON-
FORMING USE—VESTED RIGHTS.

A plaintiff did not acquire a vested right to use its land for
outdoor advertising by way of nonconforming use where, in
reliance upon a building permit issued under a former zoning
ordinance, it had staked the location of a billboard and had a
power company install a 40-foot power pole and transformer
and lines for illumination prior to the effective date of the
amended ordinance because there must be some tangible
change in the land itself by excavation and construction to
acquire a vested right.

3. ZONING—ORDINANCES—AMENDMENT—NOTICE.

A plaintiff holding a building permit under a former zoning
ordinance cannot claim lack of knowledge of an amended
ordinance which effectively revoked his permit where all the
statutory requirements for notice and hearings were satisfied
(MCLA 125.272 et seq.).

DISSENT BY J. H. GILLIS, J.

4. ZONING—ORDINANCES—AMENDMENT—BUILDING PERMIT—NONCON-
FORMING USE—VESTED RIGHTS.

*A plaintiff who, in reliance upon a former zoning ordinance and*

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 58 Am Jur, Zoning § 173.
[3] 58 Am Jur, Zoning § 184.

*prior to the effective date of the amended ordinance, had
purchased land, executed a land contract, obtained a building
permit, negotiated and completed an advertising contract,
staked the location for erection of a billboard, caused a pole
and transformer to be placed on the land, and begun construc-
tion of the billboard, had a vested property interest and a valid
nonconforming use.*

Appeal from Kent, John T. Letts, J. Submitted
Division 3 February 8, 1973, at Grand Rapids.
(Docket No. 14450.) Decided March 29, 1973. Leave
to appeal granted, 390 Mich 794.

Complaint by Dingeman Advertising, Inc.,
against Algoma Township and others to enjoin
defendants from interfering with plaintiff's erec-
tion of a billboard. Permanent injunction granted.
Defendants appeal. Reversed and remanded with
instructions.

*Warner, Norcross & Judd* (by *Robert H. Skilton),*
for plaintiff.

*Annis, Annis & Oldstrom (Don V. Souter,* of
counsel), for defendants.

Before: DANHOF, P. J., and R. B. BURNS and J. H.
GILLIS, JJ.

DANHOF, P. J. Defendant township appeals from
a permanent injunction barring it from interfering
with plaintiff's use of its land. This case involves
the question of an alleged nonconforming use of
real property. The issue is whether an outdoor
advertising board on plaintiff's property consti-
tuted a nonconforming use on April 6, 1971, the
date of the adoption of the 1971 Algoma Township
zoning ordinance.

The facts before the trial court and now before
this Court have been stipulated by the parties. In

April of 1970, plaintiff explored the possible avail-
ability of a site for a billboard along US 131
Expressway in Algoma Township. After study of
the zoning map of the ordinance then in effect and
after discussion with Supervisor Long, it was de-
termined that such a billboard could be erected in
an area which was zoned commercial at the inter-
section of 13 Mile Road and US 131. The Algoma
Township zoning ordinance then in effect did in
fact permit the erection of this type of structure at
this location. Plaintiff thereafter entered into a
contract to purchase land at this location. On May
15, 1970 plaintiff applied for and received a valid
building permit for the erection of an outdoor
advertising painted bulletin board with steel-beam
construction. The permit was to expire in one
year. Plaintiff then entered into negotiations for
an advertising contract to employ the use of the
board. In July of 1970 plaintiff caused the sign
location to be staked. From November 23, 1970
through January 19, 1971, Consumers Power Com-
pany engaged in engineering and construction
work resulting in the installation on plaintiff's
land of a 40-foot pole to which a transformer and
power lines were attached. On April 1, 1971 an
advertising contract was signed and plaintiff began
construction of the billboard at his place of busi-
ness in Traverse City, Michigan. On April 6, 1971
a substitute zoning ordinance was adopted by the
township board. One effect of this ordinance was to
preclude the use of the land in question for the
purpose of outdoor advertising. The ordinance was
given immediate effect.

It has been further stipulated that the Algoma
Township zoning ordinance adopted on April 6,
1971 was properly adopted and is valid, and that
the prior ordinance adopted on December 9, 1955

was properly adopted and was prior to its repeal a valid ordinance.

On April 28, 1971 plaintiff's crews arrived at the site and began erecting the structure for the painted bulletin board. The work had progressed to a point where the general frame was up, when defendant building inspector arrived at the scene and presented a stop order. It was only at this point that plaintiff had any actual knowledge of the change in the zoning ordinance. Plaintiff timely filed a claim to the Algoma Township Board of Appeals. Having failed in this appeal, plaintiff brought suit seeking an injunction against the township. In granting the injunction, the trial court found "that the plaintiff relied upon the permit, that it incurred substantial costs and that sufficient work was done upon the land by the placing of pole and transformer thereon such as would create a vested property right before the effective date of the 1971 ordinance".

Since the facts are not in dispute, we now decide whether as a matter of law the issuance by the defendant of the stop order deprived the plaintiff of a vested property right. Recently, this Court was confronted with a similar issue in *Rodd v Palmyra Twp,* 42 Mich App 434 (1972). We were there guided by language quoted with approval by our Supreme Court in *City of Lansing v Dawley,* 247 Mich 394, 397 (1929):

" 'Evidently the test in each case as to whether a holder of a permit has acquired vested rights thereunder is, not whether he has spent much or little in reliance upon it, but rather whether there has been any tangible change in the land itself by excavation and construction.' "

The above test has the advantage of being at once

pragmatic and objective and has been followed by our courts in determining whether vested rights in land have been acquired by way of a nonconforming use. *De Mull v City of Lowell,* 368 Mich 242 (1962); *Franchise Realty Interstate Corp v Detroit,* 368 Mich 276 (1962).

In this case, plaintiff did expend a substantial sum of money in reliance upon the permit issued and in preparation for the use of its land for advertising purposes. However, whether sums are expended in preparation for construction is not the point on which the issue turns. There must be some "tangible change in the land itself by excavation and construction", *Dawley, supra.* Plaintiff draws our attention to two activities that took place upon its land before the effective date of the substitute ordinance. (1) The location of the sign was staked; (2) Consumers Power Company installed at plaintiff's request a 40-foot power pole with transformer and lines attached. It can only be inferred that the costs of staking were minimal since neither plaintiff's brief nor the stipulations make mention of them. Moreover, it is to be noted in *Dawley* that the landowner also caused a survey to be made of his land and ordered plans based upon the survey. Still the court found that the defendant had acquired no vested rights.

The installation of the power pole presents a closer question. Plaintiff argues that here we have a tangible change in the land which satisfies the *Dawley* test; that "tangible change" is a relative concept which varies in degree according to the character of the use which it is intended to effect; that to erect a billboard, relatively little change need be made in the land. However, it is to be remembered that plaintiff claims and defendant contests that plaintiff has acquired a vested right

to use its land for outdoor advertising purposes, not to illuminate it. In *Dawley,* the defendant tore down one structure on his land and had another moved in preparing for construction. No vested rights were found to exist. Moreover, in this case, the installation of the pole, transformer, and lines was done by Consumers Power Company at no expense to the plaintiff.

Plaintiff refers us to the case of *De Mull v City of Lowell, supra.* That case involved the use of land as a junkyard. There the facts indicate that the landowner had not only purchased land and old automobiles which he placed thereon, but also had begun the *construction* of a fence and the sale of automobiles before the effective date of the ordinance. We are also asked to consider *Detroit Edison Co v City of Wixom,* 382 Mich 673 (1969). There the use of the purchased right-of-way was the transmission of electrical power by high-voltage lines. The facts indicate that *construction* of a high-tension line had been partially completed before the zoning ordinance was amended. In addition, that case involved an investment of well over $6 million in rights-of-way and construction outside the territorial limits of the city and cannot, therefore, be compared to the case at bar.

We are of the opinion that defendant township did not deprive plaintiff of vested rights acquired by way of a nonconforming use. In *Franchise Realty Corp v Detroit, supra,* the *Dawley* case was interpreted as follows:

"The *City of Lansing Case* holds that, even after issuance of permit, construction in pursuance of such permit is enjoinable when, prior to construction or fairly indicative commencement of construction, an ordinance is enacted which validity [validly] bars what was lawfully authorized by the permit." *Franchise*

*Realty Interstate Corp v Detroit,* 368 Mich 276, 279 (1962).

Construction of plaintiff's bulletin board was not commenced until 22 days after the ordinance in question became effective.

Concerning plaintiff's lack of knowledge of the ordinance change, this matter is disposed of by the stipulation that the ordinance was properly adopted and is valid. Therefore, all the statutory requirements for notice and hearings were satisfied. MCLA 125.272 *et seq.;* MSA 5.2963(2) *et seq.* However, we elaborate from the record to show that plaintiff's complaint regarding lack of knowledge is without merit. The township planning commission published the proposed text of the ordinance on two occasions before submitting it to the Kent County Planning Commission for review. These publications on March 26, 1970 and April 16, 1970 were made roughly a year before adoption of the ordinance by the township board. After adoption of the ordinance on April 6, 1971, it was published on April 15, 1971—almost two weeks before plaintiff's construction crew arrived at the site.

Reversed and remanded with directions to enter an order that plaintiff restore the site to its former condition and that the property be used for the purpose and uses conforming to the 1971 Algoma Township zoning ordinance within 30 days of the date of said order. No costs, a public question being involved.

R. B. BURNS, J., concurred.

J. H. GILLIS, J. *(dissenting).* I think plaintiff's case lies within the exception expressed in *City of Lansing v Dawley,* 247 Mich 394 (1929). The stated

rule, which is pragmatic and objective, is also tailored to the *Dawley* facts. The property owner's purpose in *Dawley* was the construction of a building; thus razing of old structures with no further action was insufficient to vest rights. In that case, no tangible change in the character of the land by excavation and construction had taken place. *City of Lansing v Dawley, supra,* citing *Rice v Van Vranken,* 132 Misc 82; 229 NY Supp 32 (1928).

I believe the proper application of *Dawley* is first to inquire about the character of use to which the land will be put before asking whether tangible change has occurred. I agree with plaintiff; tangible change of a substantial nature is a relative question. *De Mull v City of Lowell,* 368 Mich 242 (1962), applied the *Dawley* test; the Court found that initiating construction of a 7-foot fence* was sufficient to vest property rights in a junkyard prior to enactment of a new zoning ordinance. The Court focused on the substantial work performed by plaintiff in utilizing the property in accordance with the permit.

I think *De Mull v City of Lowell, supra,* is analogous to this case. The only tangible changes in the property were the staking of the sign and the erection of the power pole. However, plaintiff had performed substantial work in utilizing the property in accordance with the existing zoning ordinance and permit issued to him for erection of a billboard. He had purchased the land, executed a land contract, obtained a building permit, negotiated and completed an advertising contract, staked the location, caused a pole and transformer to be placed on the land, and began construction of the

---

* This was the only tangible effect on the real estate. The plaintiff had also performed these acts: He entered into a purchase agreement, executed a land contract for purchase, purchased some automobiles, ordered fence posts, and obtained a dealer's license.

sign at his shop in Traverse City, expending $2,-645. According to these facts, following *De Mull,* plaintiff has a vested property interest and a valid nonconforming use.

A substantial issue in this case was the problem of notice. Defendants assert actual notice was unnecessary. In *Dawley* the property owner had been notified of the revocation of his building permit three months prior to the commencement of construction. In this case, notice was first received when the stop order was served on the construction crew.

I would, therefore, vote to affirm the trial court.